IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTEL CORPORATION,<br><br>    Plaintiff,<br><br>  v.<br><br>AMERICAS NEWS INTEL PUBLISHING, LLC,<br><br>    Defendant. | No. C 09-05085 CRB<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS** |

In this trademark infringement and dilution case, Defendant America News Intel Publishing's ("ANIP") has moved to dismiss Plaintiff Intel Corporation's First Amended Complaint. For the reasons discussed below, Defendant's motion is DENIED.

**FACTS ALLEGED IN COMPLAINT**

Plaintiff Intel Corp. is "a world-famous company that develops, manufactures and sells a wide variety of computer, communications and Internet-related products and services." Compl. ¶ 11. "[O]ver eighty-six percent (86%) of the general public who associate the term 'intel' with any word, definition, or mark, associate the term with Intel Corporation." Compl. ¶ 12.

"Among its myriad products and services, Intel offers newsletters and information services under its INTEL mark covering diverse subjects including, but not limited to, business forecasting, consumer trends, and business analysis." Compl. ¶¶ 1, 14. These newsletters "explore how technology can improve forecasting of markets and consumer

demand, implement more efficient and convenient healthcare, and secure business information." Compl. ¶ 14. The target audience for these publications "includes individuals in the U.S. who are interested in technological business developments, trends and forecasts, both domesitc and abroad." Compl. ¶ 14.

Intel has extensive operations in Latin America generally and Mexico specifically. Compl. ¶¶ 15, 16. For instance, it operates a design center in Guadalajara, Mexico and field offices in Mexico City and Monterrey, Mexico. Compl. ¶ 16. "Consistent with its significant presence in Latin America, Intel owns approximately 880 active or pending trademark registrations for INTEL-formative trademarks throughout Latin America" and "owns and uses numerous INTEL-formative, country code top-level domains to promote Intel in Latin America." Compl. ¶¶ 17, 18.

Defendant Americas News Intel Publishing, LLC "offers consulting services and newsletter subscriptions on business, economics, travel and politics in Mexico under the trade name AMERICAS NEWS INTEL PUBLISHING and the trademarks LATIN INTEL and LATIN INTEL TRADE CENTER." Compl. ¶ 9. ANIP "promotes its services on the World Wide Web at the addresses http://www.latinintel.com and http://latinintel-tc.com." Compl. ¶ 9.

According to Intel, ANIP "targets many of the same customers as Intel and Defendant's actual customers substantially overlap with Intel's actual customers." Compl. ¶ 28. These customers include "the majority of Fortune 500 companies" and "multinational business executives and other business professionals, among others, with an interest in North American business trends affecting Mexico." Compl. ¶ 28.

**PLAINTIFF'S CAUSES OF ACTION**

Intel asserts eight causes of action in its amended Complaint. Those are:

(1) Trademark Infringement, in violation of 15 U.S.C. § 1114;

(2) False Designation of Origin, in violation of 15 U.S.C. § 1125(A);

(3) Federal Trademark Dilution, in violation of 15 U.S.C. § 1125(C);

(4) Injury to Business Reputation and Dilution under California law;

2

(5) Infringement under California law;

(6) Common Law Passing Off and Unfair Competition;

(7) Unfair Competition, in violation of Cal. Bus. Prof. Code § 17200;

(8) Federal Cybersquatting, in violation of 15 U.S.C. § 1125(d).

Now pending before the Court is ANIP's Motion to Dismiss all eight of Intel's claims.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555.

## DISCUSSION

Defendant has moved to dismiss Intel's Amended Complaint in its entirety. The Court finds that, though a close question, Intel has set forth allegations sufficient to survive a motion to dismiss.

**1. First and Second Cause of Action: Trademark Infringement and False Designation of Origin**

To state a claim for infringement of a registered trademark, a plaintiff must plausibly allege that (1) it owns a registered trademark; (2) its use of that mark began before the defendant's use; (3) the defendant's use is without the plaintiff's consent; and (4) the defendant's use is likely to cause confusion, or to cause mistake, or to deceive. *See* 15 U.S.C. § 1114(a); *Century 21 Real Estate v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1998). The elements of a false designation of origin claim under 15 U.S.C. § 1125(a) are identical, with the exception that the plaintiff's trademark need not be registered. *See* 15 U.S.C. § 1125(a). Both claims are subject to the same "ultimate test": "whether the public is likely to

3

be deceived or confused by the similarity of the marks." *Century 21*, 846 F.2d at 1178; *see also Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632 (9th Cir. 2008). The "confusion must be probable, not simply a possibility." *Murray v. Cable National Broadcasting Co.*, 86 F.3d 858, 861 (9th Cir. 1996).

In its motion to dismiss, ANIP argues that Intel has failed to state a trademark infringement claim for two reasons. First, it avers that Intel has failed to plausibly allege that it has "used" the INTEL trademark. In ANIP's view, the facts alleged in Intel's amended Complaint establish that ANIP's trade name and trademarks use the word "intel" in its generic or common sense, i.e., as a synonym for news or information, not as a reference to the INTEL mark. Second, ANIP argues that Intel has failed to allege that its use of the term "intel" is likely to deceive or confuse the public.

ANIP's first argument is not without merit. Where a defendant uses a word "for its literal dictionary definition," the defendant cannot be held liable for trademark infringement. *See Visa Int'l Serv. Ass'n v. JSL Corp.*, 2010 WL 2559003 at * 3 (9th Cir. 2009); *see also New Kids on the Block v. News America Publ'g, Inc.*, 9771 F.2d 302, 306 (9th Cir. 1992) (noting that "generic words" are not protectable). This rule "allays fears that producers will deplete the stock of useful words by asserting exclusive rights in them." *New Kids on the Block*, 971 F.2d at 306.

In this case, there is some force to ANIP's assertion that it is using the term "intel" in connection with its generic meaning. According to Intel's Complaint, ANIP "offers for sale newsletters and information services to its U.S. customers that track and forecast business, economics and politics, with an emphasis on the business environment in Mexico." Compl. ¶ 27. In other words, ANIP provides "news" and "information" about the business, economic, and political climate in Mexico. Thus, ANIP's use of the term of "intel" appears to be consistent with the term's common meaning. *See* Miriam-Webster Online Dictionary (2010) (defining "intel" as "information, news").

Despite the potential strength of ANIP's argument, the Court finds that dismissing Intel's Complaint on this ground would be premature. Intel notes in its Complaint that the

4

others words ANIP uses in its trademarks also convey that it is selling news and information about Latin America. Compl. ¶ 29. For example, ANIP stands for "Americas News Intel Publishing." Because the terms "Americas," "News," and "Publishing" also signify that ANIP is providing news and information about the Americas, ANIP's use of the additional, arguably redundant, term "intel" could plausibly be viewed as an effort to "free-rid[e] on [Intel's] marks." *New Kids on the Block*, 971 F.2d at 305.

The obvious similarities of the marks and the alleged strength of the INTEL mark also support Intel's assertion that ANIP is attempting to tread on the software maker's reputation. *See* Compl. ¶ 12 (alleging that "over eighty-six (86%) of the general public who associate the term 'intel' with any word, definition, or mark associate the term with Intel Corporation").

What's more, the Court cannot, at this stage in the litigation, determine with certainty how ANIP is using the term "intel." The Court has not, for instance, had the opportunity to review copies of ANIP's newsletters, its customer solicitations, or the content of its websites. The only information available to the Court at the moment are the allegations contained within Intel's Complaint. As noted, those allegations support a plausible claim that ANIP chose to use the term "intel" in order to take advantage of Intel's reputation and goodwill.

In a second, related argument, ANIP asserts that Intel's infringement claims fail because the company has not adequately alleged that ANIP's use of "intel" is likely to cause confusion among ANIP's potential customers regarding the source of ANIP's services. The Court disagrees.

In determining whether confusion between goods and services is likely, this Court considers eight factors: (1) strength of the mark; (2) relatedness of the goods and services; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channel used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) the defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *AMF, Inc., v. Sleekcraft Boats*, 599 F.3d 341, 349 (9th Cir. 1979).

The Court finds that Intel has alleged facts sufficient to support a plausible claim that customer confusion is likely to result from ANIP's use of the Intel mark. Intel alleges, and

ANIP does not dispute, that the Intel mark "is among the most famous and distinctive in the world." Compl. ¶ 1 & ¶ 12 (alleging that eight-six percent of the general public associate the term "intel" with the Intel trademark). Intel has therefore alleged sufficient facts to place the first factor in its column.

Intel has also alleged facts sufficient to support a plausible finding that its services are closely related to ANIP's services. Specifically, Intel asserts that it "offers newsletters and information services under its INTEL mark covering diverse subjects including, but not limited to, business forecasting, consumer trends, and business analysis." Compl. ¶ 1. The company further alleges that ANIP sells "newsletters featuring similar subject matter to many of the same customers." *Id.*; *see also* Compl. ¶ 28 (alleging that ANIP "targets many of the same customers as Intel and [ANIP's] actual customers substantially overlap with Intel's actual customers."); Compl. ¶ 28 (specifically identifying the overlapping customers as "the "majority of Fortune 500 companies" and "multinational business executives and other business professionals, among others, with an interest in Northern American business trends affecting Mexico").

ANIP vigorously disputes that Intel is selling newsletters that cover topics similar to those that it covers. It likewise contests Intel's allegation that the two companies serve the same customers. ANIP may be correct. But, again, at this stage in the litigation the Court must accept Intel's allegations as true. Doing so, the Court finds that Intel has plausibly alleged that it and ANIP's services are related.

Intel's allegations likewise establish that ANIP's allegedly infringing marks and trade names are similar to the INTEL mark. ANIP's marks, which are only two or four words long, all prominently feature and emphasize the term "intel." The LATIN INTEL mark is particularly similar to Intel's mark. Therefore, the "similarity of the marks" factor also weighs in Intel's favor.

With respect to the fourth factor, Intel does not allege that there has been any actual confusion among its current or potential customers. This factor therefore does not support its infringement claim.

However, Intel has alleged that it uses the same marketing channels as ANIP to market its newsletters. Namely, the company asserts that ANIP, "along with Intel, offers [its] newsletters through websites and by email subscription." Compl. ¶ 28. Intel also alleges that, at some point, ANIP's website featured advertisements for Intel's products. Compl. ¶ 30. This allegation, which the Court must accept as true, lends further support to Intel's argument that customer confusion is likely.

Finally, Intel alleges that ANIP acted "with the bad faith intent to profit from Intel's INTEL trademark." Compl. ¶ 73. ANIP's "intent in selecting the mark" therefore also weighs in favor of a finding of customer confusion.

In sum, the Court finds that, assuming Intel's allegations are true, nearly all the *Sleekcraft* factors weigh in favor of a finding that customer confusion is likely. Accordingly, Intel has stated a plausible trademark infringement and false designation of origin cause of action.

### 2. Claim 3: Federal Trademark Dilution

Intel has likewise succeeded in stating a plausible claim for trademark dilution. To state a claim for trademark dilution, a plaintiff must show that "(1) the mark is famous and distinctive; (2) the defendant is making use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark is likely to cause dilution by blurring or dilution by tarnishment." *Jada Toys, Inc. v. Mattel, Inc.,* 518 F.3d 628, 634 (9th Cir. 2008).

ANIP concedes that the first three factors are satisfied here. Therefore, the only issue is whether Intel has plausibly alleged that ANIP's use of the term "intel" is likely to cause dilution by blurring. The Court finds that it has.

Dilution by blurring "occurs when a mark previously associated with one product also becomes associated with a second." *Visa Int'l*, 2010 WL 2559003 at * 1. "Congress has enumerated factors courts may use to analyze the likelihood of dilution [by blurring] . . ." *Id.* Those factors include: "(i) the degree of similarity between the mark or trade name and the famous mark; (ii) the degree of inherent or acquired distinctiveness of the famous mark;

(iii) the extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark; (iv) the degree of recognition of the famous mark; (v) whether the defendant intended to create an association with the famous mark; and (vi) any actual association between the defendant's mark and the famous mark." 15 U.S.C. § 1125(2)(B).

The allegations in Intel's Complaint establish several of these factors in its favor. First, as already discussed, ANIP's three marks are very similar to the INTEL mark. All three are short phrases that prominently feature and emphasize the word INTEL. Second, Intel alleges that its mark is "world-renowned" and "distinctive," allegations ANIP does not dispute. Compl. ¶¶ 50-52. Third, Intel asserts that "over eighty-six percent (86%) of the general public who associate the term 'intel' with any word, definition, or mark, associate the term with Intel Corporation," indicating that its mark has a high degree of recognition. Compl. ¶ 12. Fourth, Intel avers that ANIP intended to create an association with the Intel mark so as "to profit from Intel's INTEL trademark." Compl. ¶ 73. These allegations collectively support a plausible claim for dilution by blurring.

Arguing to the contrary, ANIP maintains, in a repeat of a previous argument, that Intel's dilution claim fails because ANIP is using the term "intel" in its generic sense. If ANIP's assertion is true, then Intel's dilution claim, like its infringement claim, is not cognizable. *See Visa Int'l*, 2010 WL 2559003, at *3 (noting that use of a word "for its literal dictionary definition" is not actionable). For the reasons discussed above, however, the Court finds that it would be premature to dismiss Intel's dilution claim on this ground. *See supra*, p. 4.

### 3. Claims 4 - 7: State Law Claims

Intel's California state law infringement, dilution, and unfair competition claims are subject to the same tests as its federal claims. *See Jada Toys*, 518 F.3d at 631 n.1, 632, 634. The company's state claims therefore survive ANIP's motion to dismiss for the same reasons as its federal claims.

/ / / /

/ / / /

8

### 4. Claim 8: Federal Cybersquatting

To state a claim for cybersquatting, the plaintiff must show: (1) defendant registered, trafficked in or used a domain name that is identical to, confusing similar to, or dilutive of, (2) plaintiff's distinctive or famous mark, (3) with a bad faith intent to profit. 15 U.S.C. § 1125(d)(1)(B)(1).

Intel alleges that ANIP's registration of the domain names www.latinintel.com and www.latinintel-tc.com constitutes unlawful cybersquatting, in violation of 15 U.S.C. § 1125(d). As already noted, Intel has alleged sufficient facts to support a plausible claim that LATIN INTEL is dilutive of the INTEL trademark. The domain names latinintel.com and latinintel-tc.com are likewise plausibly dilutive. In addition, it is undisputed that the Intel mark is famous and distinctive. Intel has therefore plead sufficient facts to satisfy the first two elements of a cybersquatting claim.

Whether Intel has alleged sufficient facts to meet the third element of a valid cybersquatting claim is a somewaht closer question. In support of its allegation that ANIP registered the domain names "with the bad faith intent to profit from Intel's INTEL trademark," Intel asserts that ANIP's "website has prominently featured unauthorized uses of Intel's trademarks and products, in an effort to [cause] consumer confusion." Compl. ¶ 21. ANIP denies that it uses Intel's trademarks or advertises its products on its website. The Court, however, must accept Intel's allegations as true.

Moreover, the allegation that ANIP's websites prominently feature Intel's trademarks and products, combined with the fact that ANIP's domain names use and emphasize the term "intel," is sufficient to state a plausible claim that ANIP registered its domain names with the bad faith intent to "divert business from the trademark holder to the domain name holder." *Bosley Medical Institute, Inc. v. Kremer,* 403 F.3d 672, 680 (9th Cir. 2005). Thus, Intel's allegations support a plausible claim that ANIP registered its domain names with a "bad faith intent to profit" from Intel's mark. Accordingly, the company's cybersquatting claim is sufficiently plead to survive ANIP's motion to dismiss.

/ / / /

9

**CONCLUSION**

For all the reasons discussed above, ANIP's Motion to Dismiss Intel's Amended Complaint is DENIED.

**IT IS SO ORDERED.**

Dated: July 12, 2010

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE